UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| TONY L. GILLIOM | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | NOS. 1:09-CV-72; 1:06-CR-3 |
|  | ) | *Chief Judge Curtis L. Collier* |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

**MEMORANDUM OPINION**

Acting *pro se*, Tony L. Gilliom ("Gilliom" or "Petitioner") brings this motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, raising, as grounds for relief, several claims of ineffective assistance of counsel in connection with his guilty pleas to cocaine and firearms related offenses, (Court File No. 40 in Criminal Action No. 1:06-cr-03).[1] The United States has filed a response, arguing Petitioner's claims warrant no relief and that this § 2255 motion should be denied, (Court File No. 48). Its arguments are well taken and, for the reasons which follow, Gilliom's motion will be **DENIED**.

**I. Standard of Review**

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States; the court lacked

---

[1]   All subsequent citations to the record refer to the criminal case file.

jurisdiction to impose the sentence; or the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid.  *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

A prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal.  *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).  Thus, Gilliom bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings.  *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively shows that the petitioner is not entitled to relief under § 2255. An evidentiary hearing is not required if a petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of a Court  *Amr v. United States*, 280 Fed. Appx. 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178

F.3d 778, 782 (6th Cir. 1999); *Cordell v. United States*, 2008 WL 4568076, * 2 (E.D. Tenn. Court 14, 2008).

Finally, a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Mere vague conclusions, which are not substantiated by allegations of specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes vague conclusive statements without substantiating allegations of specific facts and thereby fails to state a viable claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Ryals v. United States*, 2009 WL 595984, *5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, 2008 WL 2811902, *1 (E.D. Tenn. July 18, 2008).

## II.  **Facts and Procedural History**

The summary of the underlying facts, to which Gilliom stipulated, is taken from the Presentence Investigation Report ("PSR") prepared in his case. On April 27, 2005, officers with the Chattanooga Police Department responded to the vicinity of Through Street in Chattanooga on a burglary call. Police Officer Perry Walden saw Gilliom running behind a business holding a sack. Thinking he was the burglary suspect, Officer Walden pursued Gilliom, who ran up into the woods. Before the officer could follow, Gilliom left the wooded area without the sack. Police Officers Headden and Early detained Gilliom, while Officer Walden went into the woods and retrieved the sack—actually a pillow case—which contained

3

a loaded .357 Colt Lawman revolver, a plastic bag with (lab tested) 18.1 grams of crack, 1.9 grams of cocaine powder, electronic scales, and $300, all of which was in $20 bills.

The officers arrested Gilliom, and in the police car on the way to jail, he made statements to Officer Walden admitting that he did in fact possess the pillow case with the aforementioned items.

Thereafter, Gilliom pleaded guilty to two counts of a three-count indictment, to wit, possession of five (5) grams or more of a mixture and substance containing cocaine base ("crack") with intent to distribute it, in violation of 21 U. S. C. § 841(a)(l) and (b)(l)(B) (Count 2), and possession of a firearm in furtherance of the drug trafficking crime, in violation of 18 U. S. C. § 924(c)(l)(A)(I) (Count 3). For these offenses, Gilliom received respective sentences of 120 months and a consecutive 60 months, for an effective 180- month sentence.

Gilliom did not seek direct review. Acting *pro se*, Gilliom moved, unsuccessfully, to reduce his sentence under the retroactive crack cocaine guidelines, 18 U.S.C. § 3582(c)(2), but the motion was denied because the crack retroactivity amendment was in effect when he was sentenced and because changes to the crack guidelines had no effect on Gilliom's sentence due to his "career offender" classification. There followed this instant motion to vacate.

### III. Discussion

As his sole ground for relief, Petitioner contends that, in several instances, he received ineffective assistance from his court-appointed trial attorney, Mary Ellen Coleman of the

4

Federal Defender's Service. Ms. Coleman represented him during the guilty plea and sentencing stages of his criminal proceedings.

**A.     *The Controlling Law*.**

A defendant has a Sixth Amendment right to counsel, including effective assistance from that counsel, during the plea-bargaining process. *Lafler v. Cooper*, __ S. Ct. __, __, 2012 WL 932019, * 6 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."). The Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington* 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that is, outside the "wide range of professional assistance." *Strickland*, 466 U.S. at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 694.

Second, a petitioner, who enters a plea of guilty, must establish "prejudice," by showing that there is a reasonable probability that, but for counsel's professional errors, he would not have pleaded guilty but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also United States v. Cottage*, 307 F.3d 494, 500 (6th Cir. 2002). A

5

"reasonable probability" is a probability sufficient to undermine confidence in the outcome, but it is less than a preponderance of the evidence. *Strickland*, 466 U.S. at 694. Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Hill*, 474 U.S. at 59. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). A failure to show prejudice, even if a deficient performance is assumed, will doom a claim of ineffective assistance. *Strickland*, 466 U.S. at 693-94. A petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006).

**B.**     *Analysis.*

Gilliom asserts that Ms. Coleman made these five attorney errors: 1) failed to press for a reduction in Petitioner's base offense under Amendment 706 to the U. S. Sentencing Guidelines, 2) failed to argue that the results of a laboratory test of the illegal substance underlying Petitioner's drug-offense showed cocaine base, but contained no mention or reference to "crack," and, absent proof of crack cocaine, a sentence based on powder cocaine was appropriate; 3) failed to object to the use of Gilliom's prior state court convictions to enhance his sentence; 4) failed to assert a breach of the plea agreement on the part of the government; and 5) failed to object to Gilliom's criminal prosecution on double jeopardy grounds.

## C. *Attorney Failings.*

1. *Amendment 706*.

Gilliom asserts, in his first claim of ineffective assistance, that he was entitled to be sentenced under the 2007 amendment to the Sentencing Guidelines (Amendment 706) which reduces the base offense level for crack cocaine offenses and which was made retroactive effective March 3, 2008. *See* USSG. § 1B1.10 (revised Dec. 11, 2007).

Prior to the cited amendment, a given quantity of base cocaine (crack) was calculated for sentencing purposes at one hundred times the same quantity of cocaine hydrochloride (powder). Thus, the prescribed offense level for a defendant possessing one gram of crack was equal to a defendant who had 100 times the quantity of powder cocaine. Amendment 706 addressed this sentencing disparity by modifying the 100: 1 ratio, resulting in a two-level reduction in the base offense level associated with each quantity of crack.

However, Amendment 706 does not help Gilliom because he was found to be a career offender based on his 1996 and 2002 prior violent felony convictions in Hamilton County, Tennessee, and was sentenced accordingly. As the United States points out in its response, the "Career Offender" guidelines provision specified the applicable guideline range to be from 262 to 327 months, *see* USSG. § 4B1.1(c)(3), without regard to Gilliom's offense level. Since Petitioner's sentence did not turn on his offense level, but instead on his career offender classification, counsel's alleged shortcoming in failing to argue for a lower offense level under Amendment 706 caused Petitioner no prejudice. Absent a showing of prejudice, counsel did not furnish Petitioner ineffective assistance and no relief is warranted with respect to this

7

claim. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

    2.    *Disparate Penalties/Lab Results.*

In his second claim of ineffective assistance, Gilliom contends Attorney Coleman, without explaining to him that five grams of crack cocaine would trigger the same statutory mandatory minimum penalty as an offense involving five-hundred grams of powder cocaine, recommended he plead guilty to the crack cocaine charge. Further, Gilliom asserts, the lab analysis report did not mention or refer to crack cocaine, but instead revealed the substance involved in his offense to be cocaine base. Premised on the claimed lab results, Gilliom concludes the prosecution failed to meet its burden to prove, beyond a reasonable doubt, the form of cocaine involved in his crime was crack. Gilliom maintains that, but for Attorney Coleman's failure to advise him of these salient facts, he would not have pleaded guilty to, nor been sentenced for, possessing the crack form of cocaine base.

First of all, Gilliom misinterprets the results of the lab report because cocaine base, as defined in Drug Quantity Table, "means crack," which is "the street name for a form of cocaine base." USSG. § 2D1.1(c) (D). These terms are used interchangeable, thus, if a drug analysis report finds a controlled substance to be "cocaine base," that is the same thing as reporting it to be crack cocaine. To the extent that this point does not dispel Gilliom's argument as to the lack of proof of crack cocaine, as the United States correctly indicates, Gilliom stipulated in the plea agreement he signed that he possessed 18.1 grams of crack

8

cocaine, as well as 1.9 grams of cocaine powder. Thus, the record refutes his suggestion there was not the requisite degree of proof that the substance involved in his offense was crack cocaine.

Secondly, it makes no difference whether the controlled substance was crack cocaine or powder cocaine, because Gilliom was sentenced as a career offender. Recall that Gilliom was categorized as a career offender, under § 4B1.1, since his sentencing offense involved a controlled substance offense—regardless of whether it was powder cocaine, crack cocaine, or any other compound listed as a controlled substance in the drug statutes or the Drug Quantity Table—and because he was at least 18 years old with two prior violent felony convictions. *See* § 4B1.1(a). Under the career offender guideline, if a defendant is convicted of a § 924(c) firearm offense, as was Gilliom, his guideline range is 262 months to 327 months, with a 3-level reduction for acceptance of responsibility, which Gilliom received. The guideline further instructs that where a defendant, as was Gilliom, is under conviction for multiple offenses, where one of those convictions is for a § 924(c) offense, then his guideline range is the greater of the guideline range for the non-firearm offense (here, 248 to 297 months as stated in the PSR, ¶ 56) or the one for the § 924(c) conviction as a career offender (here 262 months to 327 months).

Because the career offender guideline for the § 924(c) offense was greater than the one for the controlled substance offense, then Gilliom's guideline range was 262 months to 327 months. *See* § 4B1.1(c)(2).

9

As seen by the above discussion, Attorney Coleman's purported shortcomings in failing to give the advice Gilliom alleges she should have given him caused him absolutely no prejudice because that advice was immaterial to his career offender sentence. This ineffectiveness claim lacks merit and furnishes no bais for § 2255 relief.

3. *Prior State Convictions.*

As the third alleged error on the part of Attorney Coleman, Gilliom maintains that she failed to challenge his career offender designation on the basis that, for all the district court knew at the time it imposed the underlying sentence, he may have been convicted in the state courts of the lesser-included offenses of criminal mischief or simple theft of property, rather than the prior violent felonies which were used to qualify him for enhanced sentencing as a career offender. The United States, in its response, points out that Gilliom had two prior violent felony convictions–one in March 1997, for reckless aggravated assault against a victim who sustained facial and arm injuries, which required treatment at the hospital, and one in July 2003, for aggravated assault, where Gilliom beat the victim with his fists; hit him in the forehead with a piece of wood; aimed at him a shotgun retrieved from the victim's van and pulled the trigger, though the weapon did not discharge because it was unloaded; got into a vehicle; and tried to run over the victim who was running up a road, leaving the victim with a laceration on his left temple, a large knot on his forehead, bruises on his back, and serious pain in his lower back, (PSR, ¶ 27, ¶ 24). Gilliom received a two-year sentence on the first conviction, suspended to three years of intensive probation, and a three-year sentence on the second, all but six months suspended.

The term "two prior felony convictions," for purposes of the career offender guideline, means that a "defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of . . . a crime of violence," whereas a "crime of violence" is defined as an 'offense under . . . state law, punishable by imprisonment for a term exceeding one year, that . . .has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG. § 4B1.2(a)(1) and (c). Furthermore, Application Note 1 to § 4B1.2 specifically names "aggravated assault" as a crime of violence.

Counsel had no basis in law to challenge the validity of her client's prior state felony convictions at his federal sentencing. Given the unrefuted proof of those two prior violent felony convictions, Attorney Coleman did not render a deficient performance for failing to object to those convictions. Nor did prejudice ensue since Gilliom has not demonstrated that he did not have the requisite qualifying convictions to support a career offender designation. Counsel has no duty to assert a legally baseless claim, *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and cannot be ineffective when she does not raise such a claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

4. *Breach of a Plea Agreement/Amendment 706.*

As his fourth illustration of his attorney's shortcomings, Gilliom argues his sentence reflects a clear breach of the plea agreement because, while it shows a 100-month downward departure from the top of his guidelines sentence, obtained pursuant to the government's §5K.1.1 motion, it does not show a reduction under Amendment 706, which would have lowered his cocaine offense an additional two levels. Gilliom takes the position that Attorney

11

Coleman gave him ineffective assistance by failing to raise an objection based on this reasoning.

As the Court found with respect to Claim one, *supra*, Gilliom's sentence was driven by three facts: (1) his federal criminal charge was a controlled substance offense, 2) he was at least 18 years old and 3) he had two prior violent felony convictions. These facts required him to be sentenced as a career offender, regardless of the specific controlled substance involved. Amendment 706 was in effect when he was sentenced, but it had no part to play and played no part in Gilliom's sentencing equation, which turned on his career offender category and not on whether the controlled substance offense involved crack cocaine or powder cocaine. Thus, as the Court concluded earlier, Amendment 706 is irrelevant to Petitioner's sentence.

Also, the plea agreement which Gilliom signed included the following provisions:

> 12. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court. The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553."
>
> . . .

> 16. This nine (9) page plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States.

(Doc. 17, Plea Agreement, pp. 6-9.)

The last paragraph in the plea agreement is called an integration clause, i.e., a plea agreement provision restricting that agreement's terms "to those written within its four corners" which typically insulates it from a § 2255 attack. *See United States v. Hunt*, 204 F.3d 931, 936 (6th Cir. 2000) ("(O)nce the government enters into a Rule 11 plea agreement containing an integration clause, the result . . . should be final and immune from collateral attack.").

Furthermore, when Gilliom was asked by the Court during the rearraignment hearing, whether the plea agreement encompassed all the understandings he had with the government regarding his case, he answered affirmatively, (Court File No. 44, Rearraignment T., p. 6). When asked whether, aside from the plea agreement, any government officer or agent had promised or suggested to him that he would receive a lighter sentence if he pled guilty, he responded, "No, sir,"(*Id*., p. 7). Amendment 706 was not mentioned in the plea agreement and the integration clause does not permit Petitioner now to argue the agreement contemplated that the retroactive crack amendment would apply to his sentence.

It is well-settled that where a court scrupulously follows the requirements of Fed. R. Crim. P. 11, as the Court did here, "'the defendant is bound by his statements in response to

that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice"). For all these reasons, the Court finds Gilliom's fourth claimed attorney error to be baseless.

     5.    *Double Jeopardy.*

As the final purported error, Gilliom faults counsel for failing to object to his criminal prosecution on double jeopardy grounds. In support of this claimed attorney misstep, Gilliom asserts that facts underlying the cocaine and firearm offenses in his federal prosecution and subsequent conviction were the same ones upon which rested his 2005 Tennessee convictions for possession of crack cocaine and unlawful carrying or possession of a weapon, (PSR, ¶39), for which he served a 3-month, 30-day sentence in the county jail; paid a $750 fine; and forfeited the firearm. Thus, it is his premise, that prosecuting him on the federal drug- and firearm-related offenses violated the protections against double jeopardy afforded him in Fifth Amendment to the U.S. Constitution. Unfortunately for Gilliom, this claim has no legal moorings.

Tennessee and the United States are separate sovereigns, and each sovereign has the power to enact and enforce it own criminal statutes. "When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" *Heath v. Alabama* 474 U.S. 82, 88 (1985). Double jeopardy principles are not implicated when a defendant is prosecuted and convicted for the

same act or behavior which violates criminal statutes of separate sovereigns. *United States v. Deitz*, 577 F.3d 672, 686 (6th Cir. 2009) ("Usually, prosecution in both state court and federal court for offenses that would otherwise constitute the same 'offense' under the Fifth Amendment if tried successively in the same forum, is constitutional under the dual sovereignty doctrine.") (citing *Heath*, 474 U.S. at 89-89)). Consequently, the claimed failure of counsel to assert a double jeopardy defense to Gilliom's prosecution on the cocaine and weapons charges did not constitute ineffective assistance because the argument would have been frivolous and because counsel has no duty to raise frivolous issues. *Greer*, 264 F.3d at 676; *Krist*, 804 F.2d at 946-47.

## IV. Conclusion.

In light of the foregoing discussion, Gilliom's § 2255 motion to vacate, set aside or correct his sentence will be **DENIED** and this action will be **DISMISSED**.

## V. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should Santiago file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court has individually assessed Gilliom's claims under the relevant standards and finds that those

15

claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

An appropriate order will be entered separately.

**ENTER**:

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**